UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KEVIN CHASTAIN, et al.                                                                   PLAINTIFFS

v.                                                                            CASE NO.: 3:07-CV-601-S

CHRIS ANSMAN, et al.                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court upon the related, dispositive motions of defendants Chief Robert White ("White") (DN 21) and Chris Ansman ("Ansman") (DN 26) for summary judgment. For the reasons that follow, White's motion will be granted and Ansman's motion will be denied.

BACKGROUND

In the early afternoon of November 3, 2006, then-Officer Ansman of the Louisville Metro Police Department ("LMPD") was in the vicinity of Interstate 65 ("I-65") near downtown Louisville when he heard a call over the police radio that Sergeant Barnett ("Barnett") of the LMPD was northbound on I-65 in pursuit of a reckless driver, defendant Verlin Elmore ("Elmore"). Ansman advised the radio operator that he was ahead of the pursuit and would proceed onto I-65 to assist. Near "Hospital Curve," a section of I-65 that curves sharply around the city's largest concentration of hospitals, Ansman got into the far left lane of traffic, slowed his vehicle to a near stop, activated his factory-installed hazard lights – but not his emergency police lights or siren – and waited for the pursuit to approach his location.[1]

Plaintiff Kevin Chastain ("Chastain") was driving his 18-wheeler northbound on I-65 in the

---

[1]There is some dispute as to whether Ansman stopped his vehicle wholly in the center of the far left lane or partially in the narrow (approximately 3-4 feet wide) shoulder on the left-hand side of the highway. In any event, it is undisputed that the vehicle was situated substantially in the flow of traffic.

far left lane at approximately fifty miles per hour approaching Hospital Curve when he noticed Ansman's vehicle stopped approximately 400-500 feet in the lane ahead of him. Chastain was able to execute an emergency stop and to avoid crashing into Ansman; however, as his semi ground to a halt, Chastain was rear-ended by the fleeing Elmore. The impact allegedly caused Chastain to suffer cervical and lumbar strain and torn ligaments and tendons in his left shoulder.

Chastain filed this negligence suit in Jefferson Circuit Court against Ansman and White on April 13, 2007, alleging wanton disregard for safety on the part of Ansman and failure to properly train and supervise on the part of White.[2] Ansman removed the suit to this court pursuant to 28 U.S.C. § 1441 on October 30, 2007.[3]

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute also must be genuine. The facts must be

---

[2]On May 20, 2007 Jefferson Circuit Court granted White's motion for leave to file a third-party negligence claim against Elmore. On October 15, 2007, the state court granted plaintiff Liberty Mutual Fire Insurance Company's ("Liberty Mutual") dual motion to intervene as subrogee of Chastain and to file a cross-claim against Chastain.

[3]On December 12, 2008, Chastain moved this court for permission to amend his complaint to assert a negligence claim against Elmore (DN 35). Elmore did not respond. Chastain's motion will granted by separate order.

such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Chastain alleges that White was negligent in failing to properly train and supervise Ansman in the handling of police pursuits. Specifically, Chastain argues that White failed to revoke Ansman's driving privileges despite Ansman's having caused repeated collisions in the past: On July 19, 2001, then-Chief of Police Greg Smith ("Smith") disciplined Ansman for causing his third chargeable accident in two years. Chastain argues that White should have known about this prior disciplinary action when he terminated Ansman over an unrelated matter on October 4, 2004.[4] White argues that he is entitled to summary judgment for lack of causation and qualified immunity.

Under Kentucky law, negligent training and supervision is a recognized tort. *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. App. 2000). "[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (citing Restatement (Second) of Agency § 213 (1958)) (applying Kentucky law).

In essence, Chastain's claim is that White should have known the risk that Ansman would

---

[4]White apparently terminated Ansman "mainly because of a violation of the Department's Truthfulness Policy." Ansman was successful in having the termination reduced by the Louisville Metro Police Merit Board to a twenty-nine day suspension.

cause collisions based on his past acts. However, the absence of any facts at all to support Chastain's claim renders his allegations against White mere legal conclusions devoid of any well-pleaded facts. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (citing *Baxter v. Vigo County School Corp*, 26 F.3d 728, 736 (7th Cir. 1994) (superceded by statute on unrelated point). In this case, no reasonable trier of fact could conclude that White failed to take action at a time when he should have known that Ansman posed a risk of causing collisions. White did not participate in the hiring of Ansman; nor was he involved in Smith's disciplinary action against Ansman for causing collisions – both events occurred prior to the start of White's tenure with the LMPD. There is no indication that Ansman ever caused a collision under White's supervision prior to the accident at issue here. White terminated Ansman on October 4, 2004 for reasons wholly unrelated to careless driving. Moreover, Chastain has failed to show that anything White did, or omitted to do, directly and proximately caused him harm; it is undisputed that White had no personal or physical involvement whatsoever in the incident here. Accordingly, White cannot be held liable for negligent training and supervision.[5]

Chastain alleges that Ansman was negligent in stopping on a curve in the roadway, in the fast lane, without using his emergency lights. Ansman argues that he is entitled to summary judgment for lack of causation and qualified immunity. As a preliminary matter, Ansman is not entitled to qualified immunity. Qualified immunity affords public officers and employees immunity from tort liability for acts performed in the exercise of their discretionary functions. *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). The act of safely driving a police cruiser, even in

---

[5] In light of White's success on the merits of the claim against him, the court need not consider the propriety of summary judgment on the separate basis of qualified immunity.

responding to an emergency, is not a discretionary function. *Jones v. Lathram*, 150 S.W.3d 50, 53-54 (Ky. 2004).

To establish a negligence claim against Ansman, Chastain must show: (1) Ansman owed him a duty of care, (2) Ansman breached that duty, and (3) the breach caused Chastain's damages. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). The element of damages usually consists of two parts: actual injury and legal causation. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Ansman argues that even if he owed Chastain a duty of care and breached it, he cannot be held liable because Elmore's criminal conduct was the superseding cause of the collision.

Kentucky courts have in the past utilized Restatement (Second) of Torts §§ 440-453 in addressing matters of superseding cause in tort litigation. *Siggers v. Barlow*, 906 F.2d 241, 244 (6th Cir. 1990) (citing *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1974). Section 440 of the Restatement defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Siggers* at 243, n.4. Under Kentucky law, the issue of superseding cause is a legal issue to be resolved by the court. *Id.* at 244 (citations omitted).

In support of his contention that Elmore's criminal conduct was the superseding legal cause of the collision, Ansman cites *Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589 (Ky. 1952). In *Chambers*, where police officers were chasing a fleeing suspect who collided with the driver of a milk wagon, the Court held:

> Charged as they were with the obligation to enforce the law, the traffic laws included, [the police] would have been derelict in their duty had they not pursued [the fleeing suspect]. The police were performing their duty when [the suspect], in gross violation of his duty to obey the speed laws, crashed into the milk wagon. To

>argue that the officers' pursuit caused [the suspect] to speed may be factually true, but it does not follow that the officers are liable at law for the results of [the suspect's] negligent speed. Police cannot be made insurers of the conduct of the culprits they chase. It is our conclusion that the action of the police was not the legal or proximate cause of the accident, and that the jury should have been instructed to find for the appellants.

*Id.* at 590-91.

However, *Chambers* is factually inapposite.[6] Ansman is not absolved from liability in this case merely because Elmore was fleeing from the police when he rear-ended Chastain.

Ansman had a duty to exercise ordinary care and to operate his vehicle safely with due regard for other drivers using the roadway. That duty included the duty to appreciate what was going on behind him. "[T]he fact remains that drivers on [urban expressways] are pointedly charged with the knowledge that other motorists are closely trailing them, so that they must exercise appropriate care when suddenly stopping to afford warning to the trailing drivers." *Donegan v. Denney*, 457 S.W.2d 953, 957 (1970). There is a factual dispute as to the speed with which Ansman brought his vehicle to a sudden stop or near stop. It is clear that a reasonably prudent driver charged with coming to a sudden stop or near stop in the fast lane of a downtown highway should know that such action could create a dangerous condition for trailing drivers.

Of course, both Chastain and Elmore, too, had a duty to operate their vehicles safely with due regard for other drivers using the roadway. That duty included the duty to maintain a proper lookout for potential road hazards, to exercise control over their vehicles, to drive at a safe speed, and to keep a safe distance from cars in front of them so they could stop in time. It is a jury question as to whether any of these duties were breached by any of the drivers. Accordingly, summary

---

[6]Nevertheless, the court notes that *Chambers* does *not* hold that all intervening criminal acts are not reasonably foreseeable.

judgment is inappropriate in this matter as to Ansman, and his motion will be denied.

## CONCLUSION

Because the court finds that there are no genuine issues of fact as to White's involvement in the incident at issue and White is entitled to summary judgment as a matter of law, White's motion for summary judgment will be granted. Because the court finds that genuine issues of fact exist as to Ansman's involvement in the accident and Ansman is not entitled to summary judgment as a matter of law, Ansman's motion for summary judgment will be denied.

A separate order will be entered herein this date in accordance with this opinion.

August 28, 2009

Charles R. Simpson III, Judge
United States District Court